**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JESUS SANDOVAL CERVANTES, Cesar Leon Torres, Jose Antonio Andrade Hernandez, Luis Manuel Bojorge Hernandez, and Jose Guadalupe Negrete Ramirez. | § § § § § | |
| Plaintiffs, | § § | Case No. 20-cv-1132 |
| v. | § § | Honorable Paul L. Maloney |
| SPRING MEADOW NURSERY, INC. | § § | |
| Defendant. | § § § | |

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(B)(1) AND RULE 12(B)(6) MOTIONS TO DISMISS

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES PRESENTED.................................................................. iv

CONTROLLING AND MOST APPROPRIATE AUTHORITIES ...................................v

I.      INTRODUCTION ..............................................................................................1

II.     SUMMARY OF RELEVANT FACTS ..............................................................1

III.    STANDARD OF REVIEW ................................................................................3

IV.     ARGUMENT ......................................................................................................4

    A.  **This Court Has Federal Question Jurisdiction Under § 1331 Because Plaintiffs'
        Breach of Contract Claim Turns on a Substantial Question of Federal Law.**.............4

        1.  <u>A Federal Issue is Necessarily Raised in Plaintiffs' Contract Claims.</u> ....................5

        2.  <u>Plaintiffs' Claims are Disputed by Defendant.</u> ..........................................................9

        3.  <u>The Interpretation of 20 C.F.R. §655.122(n) is Substantial.</u>....................................9

        4.  <u>Plaintiffs' Rights Under 20 C.F.R. §655.122(n) Can Be Determined Without
            Disrupting Congress' Intended Division of Labor Between State and Federal
            Courts.</u> .........................................................................................................................12

        5.  <u>Other District Courts Have Exercised Federal Question Jurisdiction to Resolve
            Legal Issues Involving the Proper Interpretation of H-2A Regulations.</u> ................13

    B.  **Plaintiffs Plausibly Allege Their Private Right of Action for Breach of Contract.** ...14

    C.  **Plaintiffs Plausibly Allege a Claim for Invasion of Privacy.**........................................17

        1.  <u>Defendant Intruded upon Plaintiffs' Seclusion, Solitude and Private Affairs.</u> .......18

        2.  <u>Defendant Intruded into a Matter in Which Plaintiffs have a Right of Privacy.</u> .....19

        3.  <u>Defendant's Intrusion was by Means or Method Objectionable to a Reasonable
            Person.</u> .......................................................................................................................22

    D.  **This Court has Supplemental Jurisdiction over Plaintiffs' Invasion of Privacy
        Claim.**.............................................................................................................................23

V.    IN THE ALTERNATIVE, PLAINTIFFS SEEK LEAVE TO AMEND ..........................24

VI.    CONCLUSION..................................................................................................................24

## <u>STATEMENT OF ISSUES PRESENTED</u>

A.  Whether Plaintiffs have presented a cause of action that merits federal question jurisdiction when Plaintiffs' Contract Claims necessarily raise substantial federal issues disputed by Defendant regarding the interpretation of the H-2A contract, which will not impede on the division of labor between state and federal courts in future cases and will align with other federal courts' application of federal question jurisdiction in similar cases.

B.  Whether Plaintiffs plausibly allege a breach of contract claim when Defendant does not dispute that a contract was entered between Defendant and Plaintiffs, Plaintiffs allege that Plaintiffs suffered damages as a result of Defendant's failure to comply with the terms of the contract, and Courts have consistently held that H-2A workers have a private right of action for a breach of contract.

C.  Whether Plaintiffs plausibly allege invasion of their privacy in violation of Michigan state law by alleging that Defendant intruded upon their right to seclusion by entering and searching their home, placing their home under video and audio surveillance, and searching their trash without justification.

D.  Whether this Court has supplemental jurisdiction to hear Plaintiffs' invasion of privacy state law claim when they have established that this Court has federal question jurisdiction to hear their breach of contract claim and the invasion of privacy claim is based on the terms of the H-2A contract.

## <u>CONTROLLING AND MOST APPROPRIATE AUTHORITIES</u>

### <u>Cases</u>

*Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008) ....................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................4

*Avila-Gonzalez v. Barajas*, No. 2:04-cv-567, 2006 WL 643297, at *1 (M.D. Fla. March 2, 2006 ......................................................................................................................................12, 14

*Baker v. JP Morgan Chase Bank, N.A.*, No. 3:12-cv-1222, 2013 WL 5331136 (M.D. Tenn. Sept. 23, 2013) .................................................................................................................................... 23

*Beaumont v Brown*, 237 N.W.2d 501 (Mich. Ct. App. 1975), *rev'd on other grounds*, 257 N.W.2d 522 (Mich. 1977) ......................................................................................................... 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................4

*Boyd v. United States*, 116 U.S. 616, 630 (1886) ........................................................................20

*Caugills v. Hepburn Orchards, Inc.*, No. JH-84-989, 1987 WL 47376 (D. Md. June 5, 1987) .............................................................................................................................6, 10, 12

*Calixtro-Calixtro v. Est. of Hodges*, No. 1:17-cv-394, 2018 WL 5839690 (W.D. Tex. Nov.7, 2018) .......................................................................................................................................14, 15

*Centeno-Bernuy v. Becker Farms*, 564 F.Supp.2d 166 (W.D.N.Y. 2008) ...................................17

*Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890 (10th Cir. 1972) ..................................................17

*City of Chi. v. Int'l College of Surgeons,* 522 U.S. 156, 164 (1997) ............................................23

*Cooper v. Am. Emp. Ins. Co.*, 296 F.2d 303 (6th Cir. 1961) ........................................................24

*Devault v. Wal-Mart, Inc.*, No. 1:20-cv-00372, 2020 WL 1954019 (N.D. Ohio April 23, 2020)...2

*Duran v Detroit News, Inc.*, 504 N.W.2d 715 (Mich. Ct. App. 1993).........................................18

*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006).........................10, 11, 12

*Enos v. Wenta*, No. 19-cv-13797, 2020 WL 5985568, at *2 (E.D. Mich. Mar. 24, 2020) .............4

*Estate of Cornell v. Bayview Loan Processing, LLC,* 908 F.3d 1008 (6th Cir. 2018)..............5, 10

*Figueroa-Cardona v. Sorrells Brothers Packing Co., Inc.,* No. 2-05-cv-601, 2007 WL 672303 (M.D. Fla. Feb. 14, 2007) ...........................................................................................................16

*Frederick County Fruit Growers Association, Inc. v. Martin*, 968 F.2d 1265 (D.C. Cir. 1992)...15

*Garcia-Celestino v. Consol. Citrus, LP,* No. 2:10-cv-542, 2015 WL 3440351 (M.D. Fla. May 28, 2015), *rev'd on other grounds*, 898 F.3d 1110 (11th Cir. 2018) ..................................................16

*Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 644 (M.D. Fla. 2012), *rev'd on other grounds*, 898 F.3d 1110 (11th Cir. 2018) ...................................................................................1

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007)................................3

*Gomez v. Florida State Employment Service*, 417 F.2d 569 (5th Cir. 1969)..................................8

*Grable & Sons Metal Prods, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) .......... 4, 5, 10-13

*Griswold v. Connecticut*, 381 U.S. 479, 495 (1965).....................................................................20

*Guglielmo v. Montgomery Cty.*, No. 3:17-cv-6, 2017 U.S. Dist. LEXIS 198853 (S.D. Ohio Dec. 4, 2017) ............................................................................................................................................3

*Gunn v. Minton*, 568 U.S. 251 (2013) .................................................................................4, 5, 10

*Hamberger v. Eastman*, 206 A.2d 239 (N.H. Sup. Ct. 1964) ......................................................19

*Harkey v. Abate*, 346 N.W.2d 74 (Mich. Ct. App. 1983) ............................................................19

*Keep v. Dist. of Columbia Dep't of Employment Services*, 461 A.2d 461 (D.C. Cir. 1983)............6

*Lecce v. Medtronic, Inc.*, No. 1:18-cv-2720, 2019 WL 2925102 (N.D. Ohio Jul. 8, 2019) (N.D. Ohio Jul. 8, 2019)............................................................................................................................13

*Lewis v. LeGrow*, 670 N.W.2d 675 (Mich. Ct. App. 2003) (citing *Tobin*, at 331 N.W.2d. 189-190) ......................................................................................................................................................18

*Lopez v. Fish,* Case No. 2:11-cv-113, 2012 WL 2126856 (E.D. Tenn., May 21, 2012) .............15

*Marcus v. Medical Initiatives, Inc.*, No. 8:12-cv-2864, 2013 WL 718530, at *4 (M.D. Fla. Feb. 27, 2013) ..........................................................................................................................................11

*Martinez-Bautista v. D & S Produce,* 447 F.Supp.2d 954 (E.D. Ark. 2006) ..............................16

*Mays v. City of Flint*, 871 F.3d 437 (6th Cir. 2017) ....................................................................13

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007)..............................5, 10, 12, 13

*Miller v. Bruenger,* 949 F.3d 986 (6th Cir. 2020)..........................................................12

*Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95 (Mich. 2014) .....................17

*Montgomery v. Buege*, No. 08-cv-385, 2009 WL 1034518 (E.D. Cal. Apr. 16, 2009).................2

*Morales-Acardio v. Shannon Produce Farms, Inc.,* No. 6:05-cv-052, 2007 WL 2016199 (S.D. Ga. July 18, 2007)..........................................................................................................16

*Moreno-Espinoza v. J & J Ag Products, Inc.*, 247 F.R.D. 686 (S.D. Fla. 2007).........................16

*Morse v. McWhorter*, 290 F.3d 795 (6th Cir. 2002) .....................................................24

*Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244 (6th Cir. 1996) ............................4

*NeuroRepair v. The Nath Law Group*, 781 F.3d 1340 (Fed. Cir. 2015).......................................10

*Nieto-Santos v. Fletcher Farms*, 743 F.2d 638 (9th Cir. 1984).........................................13, 16, 17

*Palma Ulloa v. Fancy Farms, Inc.*, 274 F.Supp.3d 1287 (M.D. Fla. 2017) ................................13

*Payton v. New York*, 445 U.S. 573 (1980) ................................................................................20

*Perez-Benites v. Candy Brand, LLC*, No. 1:07-cv-1048, 2011 WL 1978414 (W.D. Ark. May 20, 2011) ................................................................................................................................16

*Ramirez Cruz v. U.S.A.*, 219 F.Supp.2d 1027 (N.D, Cal. 2002) ......................................................7

*Rico Murillo v. Dillard*, No. 1:15-CV-00069, 2016 WL 3131115, at *1 (W.D. Ky. May 26, 2016) ..............................................................................................................................14

*Rivera Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892 (9th Cir. 2013) .....................................16

R*oach v. Harper*, 105 S.E.2d 564 (W.V. Ct. App. 1958)..............................................................19

*Rosario-Guerrero v. Orange Blossom Harvesting, Inc.,* 265 F.R.D. 619 (M.D. Fla. 2010).........16

*Salas-Mateo v. Ochoa*, No. 03-14357-CV, 2004 WL 1824124 (S.D. Fla. Mar. 26, 2004)..........16

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir. 1985)............. 15-16

*Saldana v. Kelsey-Hayes Co.*, 443 N.W.2d 382 (Mich. Ct. App. 1989)...........................18, 21, 22

*Sejour v. Steven Davis Farms, LLC,* 28 F.Supp.3d 1216 (N.D. Fla. 2014) ..................................16

*Silver Phoenix, LLC v. Trinity Health-Michigan*, No. 19-cv-13777, 2020 WL 1975179 (E.D. Mich. Apr. 24, 2020). ...................................................................................................................13

*Southern New England Telephone co. v. Global NAPs, Inc.*, 624 F.3d 123 (2d Cir. 2010)..........12

*Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097 at *1 (W.D. Ky. Oct. 4, 2016) ...................................................................................................................................24

*Tefft v. Seward*, 689 F.2d 637 (6th Cir. 1983) ............................................................................24

*Tobin v. Civil Serv. Emps. of State of Michigan*, 331 N.W.2d 184 (Mich. 1982) ........................18

*United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994) ....................................................................3

*Vazquez v. Lamont Fruit Farm, Inc.*, No. 06-cv-582S, 2011 WL 4572066 (W.D.N.Y. Sept. 30, 2011) .........................................................................................................................................16

*Wiles v. Ascom Transp. Sys.*, 478 Fed. Appx. 283 (6th Cir. 2012)...............................................22

*York v. Gen. Elec. Co., 759 N.E.2d 865* (Ohio Ct. App. 2001) ....................................................21

## **Statutes**

28 U.S.C. § 1331 ................................................................................................................ 3-5, 14

28 U.S.C. § 1367 ....................................................................................................................23

29 U.S.C. § 49 .........................................................................................................................8

## **Regulations**

20 C.F.R.  §610.10(c)(1)(ii) (out of force) ...................................................................................7

20 C.F.R. § 653.501(c)(2)(i) ...........................................................................................8, 10, 13

20 C.F.R. § 655.10a (g) (out of force) ........................................................................................7

20 C.F.R. § 655.10a (h) (out of force) ........................................................................................7

20 C.F.R. § 655.121(a)(3) ...........................................................................................................8

20 C.F.R. § 655.121(c) ...............................................................................................................8

20 C.F.R. § 655.122(h)(2) ......................................................................................................2, 6

20 C.F.R. § 655.122(i) ...............................................................................................................6

20 C.F.R. § 655.122(q) .................................................................................11

20 C.F.R. § 655.122(n) ......................................................................5, 8, 9-13

20 C.F.R. § 655.135(c) ..................................................................................8

20 C.F.R. § 655.154 ......................................................................................8

**Rules (local and federal)**

Fed. R. Civ. P. 10(c) ....................................................................................2

Fed. R. Civ. P. 12(b)(1) ........................................................................3, 4-13

Fed. R. Civ. P. 12(b)(6) .......................................................................4, 14-22

**Federal Regulations**

29 Fed. Reg. 19101 (Dec. 30, 1964) ...........................................................16

29 Fed. Reg. 19102 .......................................................................................7

32 Fed. Reg. 4569 (March 28, 1967) .............................................................7

32 Fed. Reg. 4570 .........................................................................................7

75 Fed. Reg. 6957 (Feb. 12, 2010) ...............................................................8

**Other**

H-2A Agricultural Clearance Order (Exhibit A) .................................2, 5, 20

Migrant Labor Agreement of 1951, Pub.L. No. 78, 65 Stat. 119, as Amended (1951) (Exhibit B)

.......................................................................................................................7

Restatement (Second) of Torts § 652B (1977) ......................................18-19

U.S. Const. amend. IV ...............................................................................20

## I.    INTRODUCTION

Plaintiffs are foreign migrant agricultural workers who entered a contract with Defendant under the H-2A federal program to work in the United States from March to September 2020. Plaintiffs allege that Defendant breached this contract when it terminated them without cause months before the end of their employment period. Defendant claims that this Court does not have subject matter jurisdiction to hear Plaintiffs' complaint and that Plaintiffs have not sufficiently pled their case. For the reasons set forth below, the Court should deny Defendant's motion to dismiss and allow Plaintiffs to proceed with their claims in this forum.

## II.    SUMMARY OF RELEVANT FACTS

Plaintiffs' claims are centered on their dismissal from their jobs shortly after their arrival in Michigan. Compl. PageID.11 ¶¶50-54. Defendant, through its Agent MAS Labor H2A, LLC, applied for and was granted a temporary labor certification from the U.S. Department of Labor ("USDOL") to bring foreign agricultural workers to work at its nursery operation in Grand Haven, Michigan in 2020. PageID.6 ¶¶21-23. Based on the H-2A regulations, Defendant's application, together with the clearance order it submitted certifying that the order described the terms and conditions of employment and contained all material terms of the job, constituted the employment contract between Defendant and the employees it purported to hire.[1] PageID.6 ¶¶22-23. As a result, a violation by Defendant of the H-2A regulations also constituted a breach of the Plaintiffs' employment contracts and vice versa. Federal H-2A regulations incorporated into Plaintiffs' contracts guaranteed the Plaintiffs employment for at least three-fourths of the anticipated work

---

[1] It is not unusual for the employment terms in H-2A worker contracts to be dictated in large part by the federal regulations. *See, e.g., Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 644 (M.D. Fla. 2012), *rev'd on other grounds*, 898 F.3d 1110 (11th Cir. 2018) ("most" of H-2A workers' contract terms "were dictated by federal regulations governing the H-2A program.").

hours (the "three-fourths guarantee") and promised the workers return transportation to their homes in Mexico at the conclusion of their employment. PageID.4, ¶¶17, 24; 20 C.F.R. §§ 655.122(h)(2) and (i).

In 2020, Defendant, through its agent, recruited and hired each Plaintiff to work at its nursery operation in Grand Haven, Michigan pursuant to its USDOL approved clearance order. PageID.7 ¶25; Exhibit A, Agricultural Clearance Order. By the end of March 2020, all five Plaintiffs had traveled to Michigan and were working for Defendant. PageID.7 ¶28. After approximately seven weeks of work, Plaintiffs were infected with COVID-19. PageID.10 ¶46. Defendant placed them in the same housing unit to quarantine for two weeks, did not provide meals or transportation for workers to buy food, and without their consent, searched their homes, searched their trash, and placed two cameras facing their home to surveil them. PageID.10, 13 ¶¶48, 63, 70, 71. Defendant did not disclose in its application or clearance order that Plaintiffs would be subject to surveillance as a term of their employment. Ex. A.[2] Days after the Plaintiffs' medical provider cleared them to return to work and before they were permitted to return to work by Defendant, Defendant fired them without cause and expelled them from their homes, approximately three months prior to the end of their contract period. PageID.11 ¶¶50-51. Defendant failed to pay them the three-fourths guarantee per their contract and failed to pay for their return trip to Mexico. PageID.11 ¶52.

---

[2] Exhibit A, Defendant's Clearance Order, is available at: https://seasonaljobs.dol.gov/job-order/H-300-20023-272562. Since Plaintiffs cite to the Clearance Order in their complaint, the Clearance Order is therefore incorporated into the pleadings by reference and should be considered in deciding Defendant's motion. Fed. R. Civ. P. 10(c); *Devault v. Wal-Mart, Inc.*, No. 1:20-cv-00372, 2020 WL 1954019 *2 (N.D. Ohio April 23, 2020) (Citing to *Montgomery v. Buege*, No. 08-cv-385, 2009 WL 1034518 *3 (E.D. Cal. Apr. 16, 2009), "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

Plaintiffs allege that Defendant breached the H-2A contract by failing to provide employment through the end of their contract period, failing to pay for or reimburse them for travel costs to return home; failing to comply with applicable Federal, State, or local employment-related laws and regulations, failing to provide the employment opportunities described in the clearance order, and failing to provide them with weekly transportation for personal errands such as groceries and banking services. PageID.13 ¶61.

## III.     STANDARD OF REVIEW

In deciding whether to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), courts look at whether the motion is a facial challenge or a factual challenge. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citation omitted). Defendant has not specified whether it is making a facial or factual allegation and has not asserted that the facts alleged in the complaint are not true. Defendant only raises the sufficiency of the allegations of jurisdiction.[3] Therefore, Defendant raises a facial challenge.

In a facial challenge, the court will accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmovant. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When countering a facial attack, "the plaintiff's burden to prove subject matter jurisdiction is not onerous." *Guglielmo v. Montgomery Cty.*, No. 3:17-cv-6, 2017 U.S. Dist.

---

[3] Specifically, Defendant states: "Plaintiffs claim that the action arises under the laws of the United States within the meaning of 28 U.S.C. § 1331 because the terms and conditions of the employment contract were set, in part, by federal law." Defendant's Memorandum in Support of Motion to Dismiss (hereinafter "Def.'s Memo), PageID.32, ECF No. 7. Plaintiffs' allegation of federal jurisdiction arises from their Breach of H-2A Employment Contract (Complaint Count I) and is based on federal question of law under 28 U.S.C § 1331 and its attendant regulations. Plaintiffs set forth the sufficiency of their subject matter jurisdiction, arising under 28 U.S.C. § 1331, as a federal question of law. *See supra,* Subsection IV(A).

LEXIS 198853, at *7 (S.D. Ohio Dec. 4, 2017) (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)).

Dismissal of a complaint under Rule 12(b)(6) is unwarranted if the complaint includes allegations that, "accepted as true, [would] 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausible means that the allegations permit a reasonable inference of liability–something more than a "sheer possibility," but less than a "probability." *Id*. The Court must construe the complaint in the light most favorable to the plaintiffs, accepting the factual allegations as true and making all reasonable inferences in Plaintiffs' favor. *Id*.

## IV.    ARGUMENT

### A.  This Court Has Federal Question Jurisdiction Under § 1331 Because Plaintiffs' Breach of Contract Claim Turns on a Substantial Question of Federal Law.

This Court has federal question jurisdiction under § 1331 because the determination of whether Defendant breached Plaintiffs' state contract claim raises a substantial question of federal law. "[T]he Supreme Court has established that, in a narrow class of cases, federal jurisdiction exists where an important federal issue is entangled with a state claim." *Enos v. Wenta*, No. 19-cv-13797, 2020 WL 5985568, at *2 (E.D. Mich. Mar. 24, 2020), *citing Gunn v. Minton*, 568 U.S. 251, 258 (2013) ("But even where a claim finds its origins in state rather than federal law…we have identified a 'special and small category' of cases in which arising under jurisdiction still lies."). Federal jurisdiction over a state law claim arises when a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable & Sons Metal Prods., Inc. v. Darue Eng.'g & Mfg.*, 545 U.S. 308, 313-14 (2005). Where all four of these requirements are met, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages

4

thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258, *citing Grable* 545 U.S. at 313-14; *See also Estate of Cornell v. Bayview Loan Processing, LLC,* 908 F.3d 1008, 1014 (6th Cir. 2018) (citing *Grable's* four-prong analysis). Plaintiffs' claims satisfy *Grable*'s four-prong test, and thus fall within the "special and small category" of cases arising under federal law, within the meaning of 28 U.S.C. § 1331. *Gunn,* 568 U.S. at 258. Finally, other courts applying the *Grable* test have held that the interpretation of the H-2A regulations is a federal question of law giving rise to federal-question jurisdiction.

1.  A Federal Issue is Necessarily Raised in Plaintiffs' Contract Claims.

Most of Plaintiffs' contract claims turn on the Court's interpretation of "termination for cause" as that term is used in 20 C.F.R. § 655.122(n). In *Mikulski v. Centerior Energy Corp.*, the court determined that the case before it did "not raise a question of mere compliance or noncompliance with a federal statute; the question concern[ed] the meaning of the statute, specifically, the effective date provision. From this perspective, the present case more closely resembles *Smith's* conclusive determination or *Grable's* decisive guidance on future application, both of which supported substantial-federal-question jurisdiction. 501 F.3d 555, 568 (6th Cir. 2007). Similarly, Plaintiffs' claims are not merely a question of Defendant's compliance with the regulation; instead, it requires the Court to determine the actual meaning of 20 C.F.R. § 655.122(n).

The H-2A regulations do not define what infractions constitute "cause." Plaintiffs are unlikely to prevail if "termination for cause" is read broadly, so as to encompass any infraction of Defendant's work rules no matter how minor.[4] If Plaintiffs' termination was for cause, Defendant

---

[4]According to Defendant's clearance order, "[v]iolation of any lawful, job-related employer requirements, including these Work Rules, are (sic) grounds for immediate termination." Ex. A, Page 13, Addendum C, *available at* https://seasonaljobs.dol.gov/job-order/H-300-20023-272562.

has no liability under the three-fourths guarantee (20 C.F.R. § 655.122(i)) and is not responsible for the costs of Plaintiffs' return trip from Michigan to Mexico (20 C.F.R. § 655.122(h)(2)). Furthermore, Defendant's condition of "any lawful, job-related employer requirements" necessarily requires the Court to consider whether the requirements cited for termination are lawful under the H-2A regulations in addition to determining whether they meet the level of "termination for cause." As exemplified in the following paragraphs, both the USDOL and the courts have in the past declined to deny workers the three-fourths guarantee or return transportation for anything other than "serious misconduct."

The most extensive discussion of "cause" in the H-2A context came in a case involving the predecessor to the current H-2A regime. *Caugills v. Hepburn Orchards, Inc.*, No. JH-84-989, 1987 WL 47376 (D. Md. June 5, 1987) concerned the dismissal of a half dozen workers by a Maryland orchard who applied for guestworkers from Jamaica. The employer contended that the workers were fired for loafing and sloppy picking. *Id*. at *7. The district court was required to determine whether the workers were terminated for just cause, so as to disqualify them from the three-quarter guarantee. *Id.* at *5. The court held that the "just cause" required to deny these benefits required serious or gross misconduct on the worker's part. *Id.* at *7 ("Ordinary negligence in disregarding the employer's standards or rules will not suffice[.]") (Quoting *Keep v. Dist. of Columbia Dep't of Employment Services*, 461 A.2d 461, 463 (D.C. Cir. 1983)).

The *Caugills* interpretation of "cause" within the guestworker context is consistent with the historical antecedents of the current rules. Like many of the H-2A regulations, the relevant

---

While several of the Work Rules are reasonable, others are extremely exacting and not clearly work-related. Among other things, a worker is subject to immediate termination if he fails to turn off the lights in his living quarters before leaving for work in the morning (Work Rule #7), litters at the worksite or in the living quarters (Work Rule #10), or makes long-distance telephone calls, even at the worker's own expense (Work Rule #33).

contract terms at issue originated during the so-called Bracero program, during which hundreds of thousands of Mexican farmworkers were imported to work at U.S. farms between 1942 and 1964. *Ramirez Cruz v. U.S.A.*, 219 F.Supp.2d 1027, 1031-32 (N.D, Cal. 2002). As the Bracero Program was ending, the USDOL issued regulations designed to replace the terms of the agreement with Mexico under which the Braceros entered the United States. *See* 29 Fed. Reg. 19101 (Dec. 30, 1964) (noting that the regulations were needed for an orderly transition from reliance on Bracero workers). The new regulations expressly required that domestic farm workers hired through the interstate clearance system be offered at least the minimum terms offered under the Migrant Labor Agreement of 1951, as amended, the bilateral agreement that governed the employment of Braceros from 1951 through 1964. 20 C.F.R. § 610.10(c)(1)(ii), 29 Fed. Reg. 19102. In 1967, the USDOL dropped the reference to the Bracero agreement and began listing the Bracero work standards individually in the regulations. 32 Fed. Reg. 4569 (March 28, 1967). The provisions at issue in this case were among the Bracero work standards incorporated into the USDOL regulations. *See* 20 C.F.R. §§ 655.10a (g) (return transportation) and (h) (three-fourths guarantee), 32 Fed. Reg. 4570.

Article 16 of the Migrant Labor Agreement governing the Bracero program set out a three-fourths guarantee, while Article 17 required employers to pay for workers' return transportation to Mexico at the end of the contract. Ex. B, Migrant Labor Agreement of 1951, Pub.L. No. 78, 65 Stat. 119, as Amended (1951). Later, effective beginning with the 1954-55 season, the U.S. and Mexico issued a joint interpretation providing that an employer was relieved of its obligation to pay for the Bracero's return transportation "[w]hen a worker does not complete his contract for unjustified cause," as determined through enforcement mechanisms administered jointly by the United States and Mexican governments. Migrant Labor Agreement, Article 17. Thus, since at

least 1954, an employer remained liable for return transportation costs of those guestworkers it dismissed, unless the guestworkers were terminated for not merely cause, but a "justified cause" that would pass muster with the Mexican government's representatives. *Id*.

Construing "cause" as being limited to instances of serious or gross misconduct is consistent with the federal Wagner-Peyser Act, 29 U.S.C. §§ 49, *et seq.* Among other things, the Wagner-Peyser created the interstate clearance system used to recruit domestic workers to fill jobs for which H-2A workers are requested. 20 C.F.R. §§ 655.121(c), 655.135(c) and 655.154. The Wagner-Peyser Act was adopted during the Great Depression to establish a system for the recruiting and transfer of labor. *Gomez v. Florida State Employment Service*, 417 F.2d 569, 571 (5th Cir. 1969). The state workforce agencies that process and transmit employers' H-2A clearance orders intrastate and interstate, including the Michigan Department of Labor and Economic Opportunity, are funded through the Wagner-Peyser Act. 75 Fed. Reg. 6957 (Feb. 12, 2010).

Job orders submitted by agricultural employers as part of their H-2A applications must meet standards imposed by regulations promulgated under the Wagner-Peyser Act. 20 C.F.R. § 655.121(a)(3). The Wagner-Peyser Act regulations require, *inter alia*, that clearance orders offer working conditions not less than those prevailing among farmworkers in the area where the workers are to be employed. 20 C.F.R. § 653.501(c)(2)(i). As a result, it would be unlawful for an employer to terminate workers for minor infractions of work rules, unless that is the prevailing practice among other farm operators in the area. Thus, interpreting "termination for cause" under 20 C.F.R. § 655.122(n) will necessarily require consideration of federal statutes, regulations, and case law.

2. Plaintiffs' Claims are Disputed by Defendant.

Defendant disputes Plaintiffs' breach of contract claims. Plaintiffs and Defendant agree that a contract exists between them and that the terms of that contract are found in the clearance order approved by the USDOL. PageID.6-7 ¶¶ 23, 26; Def.'s Memo, PageID.30. However, according to Defendant, Plaintiffs were "terminated for cause" after multiple violations of Defendant's rules and policies. Def.'s Memo, PageID.31. Plaintiffs contend that the violations of Defendant's rules did not give rise to "termination for cause," and they are thereby entitled to the sums due them under the three-fourths guarantee and to be reimbursed for their expenses in returning to their homes in Mexico. PageID.11, ¶¶50-52. The parties' dispute, therefore, centers on whether Plaintiffs' minor rule infractions constitute "cause" or whether only instances of serious or gross misconduct trigger the provisions of 20 C.F.R. § 655.122(n).

The parties also disagree over whether Plaintiffs have the right to bring suit for any breaches of their employment contracts. Besides arguing that this Court lacks jurisdiction over Plaintiffs' claims, Defendant further insists that H-2A workers generally are barred from suing their employers for such contractual breaches. Defendant urges that any such breach of contract claims is pre-empted by the USDOL's enforcement regulations and that H-2A workers are relegated to filing administrative complaints for any contractual breaches by their employers. Def.'s Memo, PageID.29-30, 35-37. Plaintiffs contend that they have a right to sue their employer for a breach of their contract. *See infra, Subsection B.*

3. The Interpretation of 20 C.F.R. §655.122(n) is Substantial.

The questions raised in this litigation regarding the interpretation of 20 C.F.R. § 655.122(n) are substantial. For the Court to exercise federal question jurisdiction, the federal issue must be of importance to the federal system as a whole, not merely the particular parties in the litigation.

9

*Gunn,* 568 U.S. at 260. In evaluating the federal issue's "substantiality," four factors are considered: (1) "whether the case includes a federal agency, and particularly, whether the agency's compliance with the federal statute is in dispute"; (2) "whether the federal question is important (i.e. not trivial)"; (3) "whether a decision on the federal question will resolve the case (i.e. the federal question is not merely incidental to the outcome)"; and (4) "whether a decision on the federal question will control many other cases (i.e. the issue is not anomalous or isolated)." *Estate of Cornell*, 908 F.3d at 1015 (quoting *Mikulski*, 501 F.3d at 570). In considering these factors, "no single factor is dispositive, and these factors must be considered collectively, along with any other factors that may be applicable." *Mikulski*, 501 F.3d at 570.

While this case does not involve a federal agency, the federal question is unquestionably important. The issue of the proper interpretation of "for cause" in 20 C.F.R. § 655.122(n) is one of first impression.[5] Whether "termination for cause" as used in the regulation requires an elevated level of misconduct on the worker's part, as the court held in *Caugills*, or at least one that is consistent with the prevailing practices among farms in the area, as required by 20 C.F.R. § 653.501(c)(2)(i), is purely an issue of law. Such issues provide the strongest basis for "resort[ing] to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable,* 545 U.S. at 312. *See also NeuroRepair v. The Nath Law Group*, 781 F.3d 1340, 1345 (Fed. Cir. 2015) ("a substantial federal issue is more likely to be present if a 'pure issue of [federal law]' is 'dispositive of the case.'") (Quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006); *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1299 (11th Cir. 2008) ("resolution of pure issues of federal law provides the strongest basis for [federal

_____

[5] *Caugills* was decided prior to the creation of the current H-2A program through the Immigration Reform and Control Act of 1986. While persuasive, *Caugills* is not determinative of the issue under the current statute and regulations.

question jurisdiction]"); *Marcus v. Medical Initiatives, Inc.*, No. 8:12-cv-2864, 2013 WL 718530, at *4 (M.D. Fla. Feb. 27, 2013) ("cases that require the resolution of pure issues of federal law provide the strongest basis for finding federal question jurisdiction.").

Also, the decision on the federal question will control many other cases. The meaning of "termination for cause" as used in 20 C.F.R. § 655.122(n) raises "an important issue of federal law that sensibly belongs in a federal court." *Grable*, 545 U.S. at 315. It is the sort of substantial federal issue "that could be settled once and for all and thereafter would govern…numerous cases" *Empire Healthchoice Assurance*, 547 U.S. at 700 (*Quoting* R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 700 (5th ed. 2003)). Resolution of this issue potentially impacts several hundred thousand H-2A workers admitted each year.[6] The clearance orders submitted by the various H-2A employers ordinarily serve as the employment contract for the workers, 20 C.F.R. § 655.122(q), and these clearance orders contain a signed employer assurance regarding the three-fourths guarantee that incorporates the "termination for cause" language of 20 C.F.R. § 655.122(n). Form ETA-790A, Page 6, Item 8, "Three Fourths Guarantee", available at  https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/ETA-790A.pdf ("If the worker voluntarily abandons employment before the end of the period of employment set forth in the job order, or is terminated for cause, and the employer follows the notification requirements in 20 CFR 655.122(n), the worker is not entitled to the three-fourths guarantee.") As a result, this Court's interpretation of "termination for cause" may settle once and for all the meaning of a term in the employment contracts of hundreds of thousands of workers.[7]

---

[6] In Fiscal Year 2020, the USDOL certified 275,430 agricultural jobs to be potentially filled by H-2A workers, including 9,912 in Michigan. https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/H-2A_Selected_Statistics_FY2020.pdf.

[7] In deciding whether federal question jurisdiction exists, it is irrelevant whether the Court might ultimately reject Plaintiffs' contentions as to the proper interpretation of 20 C.F.R. § 655.122(n).

4. Plaintiffs' Rights Under 20 C.F.R. § 655.122(n) can be Determined Without Disrupting the Division of Labor Between State and Federal Courts.

The interpretation of "termination for cause" under 20 C.F.R. § 655.122(n) does not impede upon the division of labor between state and federal courts. In weighing the exercise of federal question jurisdiction, the federal interest in providing a forum for an issue" must always be "weighed against the risk that the federal courts will be unduly burdened by a rush of state law cases." *Mikulski*, 501 F.3d 565. There is no such danger in this case.

"Because of the limited number of H-2A workers admitted each year, federal question jurisdiction over state law claims involving these guestworkers' contracts can be exercised 'without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Avila-Gonzalez v. Barajas*, No. 2:04-cv-567, 2006 WL 643297, at *1 (M.D. Fla. March 2, 2006) (Quoting *Grable*, 545 U.S. at 314). Plaintiffs are not seeking federal jurisdiction for every case in which an H-2A worker has allegedly been terminated for cause and thereby denied payment under the three-fourths guarantee and return transportation based on 20 C.F.R. § 655.122(n). Federal question exists in this case, and will be lacking in subsequent cases, because the central legal issue in this case is one of first impression. Indeed, as the Supreme Court has stated, federal question jurisdiction should be reserved for issues "that could be settled once and for all and thereafter would govern…numerous cases." *Empire Healthchoice Assurance, Inc.,* 547 U.S. at 677. The Court needs to decide the proper interpretation of 20 C.F.R. § 655.122(n) considering the history of this and similar provisions extending back 70 years to the Bracero program, *Caugills* and other

---

*Miller v. Bruenger,* 949 F.3d 986, 990 (6th Cir. 2020) ("for purposes of assessing whether federal-question jurisdiction exists, federal courts ignore any potential defenses that may arise in the course of the litigation"); *See also Southern New England Telephone co. v. Global NAPs, Inc.*, 624 F.3d 123, 133 (2d Cir. 2010) ("A federal claim is not 'insubstantial' merely because it might ultimately be unsuccessful on its merits.")

relevant case law, and the interplay between the provision and the Wagner-Peyser Act regulations, 20 C.F.R § 653.501(c)(2)(i). In doing so, the Court will allow future disputes involving breach of contract claims based on "termination for cause" under 20 C.F.R. § 655.122(n) to be resolved by state courts.

5. Other District Courts Have Exercised Federal Question Jurisdiction to Resolve Legal Issues Involving the Proper Interpretation of H-2A Regulations.

The Defendant relies on *Nieto-Santos v. Fletcher Farms*, 743 F.2d 638 (9th Cir. 1984), a case out of the 9th Circuit that is more than 35 years old, and which was decided before the current H-2A regime was created under the Immigration Reform and Control Act of 1986 ("IRCA"), Pub.L. 99-603, 100 Stat. 3445. *See supra,* Subsection IV(A)(1) (Explaining the predecessor to the current H-2A regulations). More importantly, *Nieto-Santos* did not engage in the "substantial question doctrine" analysis now required under *Grable* and Sixth Circuit Case Law. *See e.g., Mikulski*, 501 F.3d 555; *Mays v. City of Flint*, 871 F.3d 437 (6th Cir. 2017); *Lecce v. Medtronic, Inc.*, No. 1:18-cv-2720, 2019 WL 2925102 (N.D. Ohio Jul. 8, 2019); *Silver Phoenix, LLC v. Trinity Health-Michigan*, No. 19-cv-13777, 2020 WL 1975179 (E.D. Mich. Apr. 24, 2020).

Since then, other federal courts have exercised federal question jurisdiction over breach of contract actions presenting questions of first impression regarding the proper interpretation of H-2A regulations incorporated into H-2A workers' employment contracts. A Florida district court exercised federal question over H-2A workers' contract claims that their employer had violated an H-2A regulation designed to protect guestworkers from paying recruitment fees. *Palma Ulloa v. Fancy Farms, Inc.*, 274 F.Supp.3d 1287(M.D. Fla. 2017). The court observed that the H-2A workers' claims raised "an issue of first impression that should be decided by a federal court." *Id.* at 1289.

Another Florida federal judge adjudicated H-2A workers' breach of contract claims, observing that:

> While ordinarily contract claims are adjudicated in the state courts, absent the existence of an express federal cause of action, the Court may exercise jurisdiction over H-2A workers' claims because they turn on interpretation of terms dictated by federal statutes and regulations…Federal question jurisdiction is appropriate because of the substantial federal interest in immigration matters and in seeing that businesses honor the obligations they assume in order to obtain governmental approval of their activities, as the Defendants did to obtain temporary labor certification for importation of H-2A workers.

*Avila-Gonzalez,* 2006 WL 643297, at \*1. *See also Rico Murillo v. Dillard*, No. 1:15-CV-00069, 2016 WL 3131115, at \*1 (W.D. Ky. May 26, 2016) (court exercises federal question jurisdiction under 28 U.S.C. § 1331 over H-2A workers' contact claims, because "this case arises under the laws of the United States.").

In sum, Plaintiffs' breach of contract claims falls squarely within the substantial question doctrine framework, because they necessarily raise a federal issue that is disputed. That issue poses a substantial federal question because it is important, and its resolution will control other similar cases. Lastly, exercising federal jurisdiction over this question will not disrupt the division of labor between federal and state courts and other federal courts have found likewise.

**B.  Plaintiffs Plausibly Allege Their Private Right of Action for Breach of Contract.**

As an alternative basis for dismissal, Defendant argues that Plaintiffs are barred from suing to enforce their work contracts because "[t]he DOL has the sole authority to enforce violations of the H-2A regulations." Def.'s Memo., PageID.35. Defendant cites no authorities holding that administrative enforcement by the USDOL is the one means by which the terms of H-2A workers' employment contracts can be enforced.  Defendant's argument has been expressly rejected by several federal courts. In *Calixtro-Calixtro v. Est. of Hodges*, the employer argued, as does Defendant, that authority to enforce the H-2A regulations lay exclusively with the USDOL.

14

No. 1:17-cv-394, 2018 WL 5839690, at*3 (W.D. Tex. Nov.7, 2018). In denying the employer's motion to dismiss, the court observed that "[f]ederal courts routinely hear breach-of-contract claims from H-2A workers," and the USDOL regulations do not state that enforcement authority lies solely with that agency. *Id.* The court also remarked that, much like the instant case, the employer was unable to provide any authority or case holding that USDOL has exclusive authority over, either violations of the H-2A regulations, or the H-2A workers' contract claims. *Id.*

Similarly, the employer in *Lopez v. Fish* moved to dismiss H-2A workers' breach of contract claims, contending that the USDOL had exclusive authority to enforce the employment terms and conditions of the workers' employment contracts. Case No. 2:11-cv-113, 2012 WL 2126856, at *1 (E.D. Tenn., May 21, 2012). The district court ruled that the H-2A workers were free to pursue their state law breach of contract claims, because, *inter alia*, "there are federal cases too numerous to count which have held that H-2A workers may pursue state breach of contract claims against employers who fail to comply with clearance orders..." *Id.* at *2. Because of these and other authorities, the court declined to delve deeper into the employer's argument, which the judge described as "completely unsubstantiated and devoid of merit." *Id.*[8] As both the *Calixtro-Calixtro* and *Lopez* decisions noted, numerous federal courts have awarded H-2A workers damages on their breach of contracts claims. *See, e.g., Frederick Cnty. Fruit Growers Ass'n, Inc. v. Martin*, 968 F.2d 1265, 1268 (D.C. Cir. 1992) (affirming district court's award of back pay under a contract theory, explaining: "Each grower's promise in the job clearance order created a contractual obligation running from that grower to each of its workers."); *Salazar-Calderon v.*

---

[8] H-2A workers are not required to exhaust USDOL's complaint procedure as a prerequisite to filing suit to enforce the H-2A regulations incorporated as part of their employment contracts. *Lopez Aguirre v. Workman*, No. 1998-CA-001367-MR, 2000 WL 34024458, at *3 (Ky. App. 2000)(holding that H-2A workers could proceed with their state law breach of contract claims without first exhausting the USDOL's administrative enforcement system).

*Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1342 (5th Cir. 1985) (holding that terms of employment set out in USDOL's H-2 regulations were the terms the employer was required to offer and permitting private right of recovery by H-2 workers based on contract theory); *Sejour v. Steven Davis Farms, LLC,* 28 F.Supp.3d 1216, 1233-36 (N.D. Fla. 2014) (summary judgment granted to H-2A workers on breach of contract claims); *Garcia-Celestino v. Consol. Citrus, LP,* No. 2:10-cv-542*,* 2015 WL 3440351, at *24 (M.D. Fla. May 28, 2015), *rev'd on other grounds*, 898 F.3d 1110 (11th Cir. 2018) (damages awarded class of H-2A workers on breach of contract claims); *Perez-Benites v. Candy Brand, LLC,* No. 1:07-cv-1048, 2011 WL 1978414, at *15-6 (W.D. Ark. May 20, 2011) (holding that employer was liable to H-2A workers for breaching clearance order); *Martinez-Bautista v. D & S Produce,* 447 F.Supp.2d 954, 962-63 (E.D. Ark. 2006) (summary judgment granted to H-2A workers on state law breach of contract claims); *Morales-Acardio v. Shannon Produce Farms, Inc.,* No. 6:05-cv-052, 2007 WL 2016199, at *22- 23 (S.D. Ga. July 18, 2007). Yet additional courts have granted class certification on H-2A workers' breach of contract claims.  *See, e.g.*, *Rivera Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892, 899-900 (9th Cir. 2013); *Vazquez v. Lamont Fruit Farm, Inc.*, No. 06-cv-582S, 2011 WL 4572066, at *11 (W.D.N.Y. Sept. 30, 2011); *Rosario-Guerrero v. Orange Blossom Harvesting, Inc.,* 265 F.R.D. 619 (M.D. Fla. 2010); *Moreno-Espinoza v. J & J Ag Products, Inc.*, 247 F.R.D. 686, 687, 691 (S.D. Fla. 2007); *Figueroa-Cardona v. Sorrells Brothers Packing Co., Inc.,* No. 2-05-cv-601, 2007 WL 672303 (M.D. Fla. Feb. 14, 2007); *Salas-Mateo v. Ochoa*, No. 03-14357-CV, 2004 WL 1824124 (S.D. Fla. Mar. 26, 2004).

Neither of the authorities cited by Defendant suggests that H-2A workers are prohibited from suing for breach of their employment contracts. *Nieto-Santos* expressly acknowledged that the plaintiff guestworkers could bring such claims, albeit in state court. 743 F.2d at 641, n.5. ("Nor

are appellants without an alternative remedy; they may sue in state court on their breach of contract and fraud claims.").[9] *See Centeno-Bernuy v. Becker Farms*, 564 F.Supp.2d 166, 184 (W.D.N.Y. 2008) (*Nieto-Santos* did not hold that the guestworker plaintiffs had no claim for breach of their employment contracts, only that those claims did not constitute a violation of the federal Wagner-Peyser Act). Likewise, *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890 (10th Cir. 1972) is inapposite. That case involved claims by domestic workers alleging that employers were employing undocumented workers, rather than claims by lawfully admitted guestworkers to enforce the terms of their employment contracts. *Id.*

Under Michigan law, a party asserting a breach of contract claim must prove the following elements by a preponderance of the evidence: "(1) that there was a contract, (2) which the other party breached, (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95 (Mich. 2014). Plaintiffs allege that there was a contract between them, the terms of which were incorporated in their H-2A clearance order. PageID.6-7 ¶¶23, 25-29. Defendants admit the same. Def.'s Memo, PageID.30. Plaintiffs allege that Defendant breached that contract when it terminated their employment without cause before the end of their employment period and committed other violations of the contract. PageID.11-13 ¶¶50-51, 61. Finally, Plaintiffs allege that the breach of their contract resulted in damages, namely failure of payment under the three-fourths guarantee in their contract and failure of reimbursement for the travel expenses to return to Mexico. PageID.11 ¶¶52-53. Therefore, Plaintiffs plead sufficient facts to demonstrate a reasonable inference that Defendant breached its contract with Plaintiffs. Therefore, the Court should deny Defendant's Motion to Dismiss.

---

[9] Defendant relies on *Nieto-Santos* to argue that Plaintiffs have no implied private right of action to enforce their claims in federal court. Def.'s Memo PageID.35-36. However, Plaintiffs do not assert that there is an implied right of action for federal court jurisdiction.

**C.  Plaintiffs Plausibly Allege a Claim for Invasion of Privacy.**

Plaintiffs allege sufficient facts to demonstrate a reasonable inference that Defendant invaded Plaintiffs' privacy by intruding upon their seclusion, solitude, and private affairs. Michigan has long recognized the common-law tort of invasion of privacy. *Beaumont v Brown*, 237 N.W.2d 501 (1975), *rev'd on other grounds*, 257 N.W.2d 522 (Mich. 1977). Over the years, the action has evolved into four distinct tort theories. Here, Plaintiffs advance the theory of intrusion upon their seclusion. A defendant's "intrusion upon the plaintiff's seclusion or solitude, or into his private affairs" is an invasion of plaintiff's privacy. *Tobin v. Civil Serv. Emps. of State of Michigan*, 331 N.W.2d 184 (Mich. 1982).

The three elements to establish a prima facie case of intrusion upon seclusion include: "(1) an intrusion by the defendant; (2) into a matter in which the plaintiff has a right of privacy; (3) by means or method that would be found objectionable by a reasonable person." *Saldana v. Kelsey-Hayes Co.*, 443 N.W.2d 382, 383 (Mich. Ct. App. 1989). An action for intrusion upon seclusion focuses on the manner in which the information was obtained, not on the information's publication. *Lewis v. LeGrow*, 670 N.W.2d 675, 687 (Mich. Ct. App. 2003) (citing *Tobin*, at 331 N.W.2d. at 189-190). In this respect, the claim is analogous to a trespass, except that a physical intrusion of property is unnecessary. *Duran v Detroit News, Inc.*, 504 N.W.2d 715, 720 (Mich. Ct. App. 1993).

1. Defendant Intruded upon Plaintiffs' Seclusion, Solitude and Private Affairs.

Defendant intruded upon Plaintiffs' seclusion, solitude and private affairs, when it installed cameras outside Plaintiffs' home with video and audio recording capabilities, entered and searched Plaintiffs' homes without their permission, and went through Plaintiffs' trash. According to the Restatement (Second) of Torts, "[t]he invasion may … be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking

into his upstairs windows with binoculars or tapping his telephone wires." Restatement (Second) of Torts § 652B cmt. b (1977). In this case, Defendant surveilled Plaintiffs at their home, while they were quarantining after testing positive for COVID. PageID.7, 10 ¶31, 46, 63. Cameras with video and audio recording were pointed inside Plaintiffs' home and at the second-floor balcony where Plaintiffs ate and spent their time due to no air conditioning in the unit. PageID.10, 13 ¶¶46, 64-65, 68. Additional cameras were also placed facing the front of the house and aimed at windows on the side of the house. PageID.13 ¶66. Defendants recorded video and audio of Plaintiffs through video cameras pointed at their home. PageID.13 ¶68. Furthermore, Defendant entered Plaintiffs' home and searched it while they were at work. PageID.13 ¶70. Defendant also went through the contents of Plaintiffs' trash. PageID.13 ¶71.

   2.   <u>Defendant Intruded into a Matter in Which Plaintiffs have a Right of Privacy</u>.

   Plaintiffs had a legitimate expectation of privacy in their home, their trash, and their private lives. Persons have a right to privacy within their homes and other areas where one would expect to have a common-sense right to privacy. *See Hamberger v. Eastman*, 206 A.2d 239 (N.H. Sup. Ct. 1964) (plaintiff sufficiently pled invasion of privacy claim where defendant placed listening devices into bedrooms of his tenants, even though the plaintiffs did not allege he actually used the devices); *Harkey v. Abate*, 346 N.W.2d 74 (Mich. Ct. App. 1983) (held that the installation of see-through panels in the ceiling to permit viewing into public restroom stalls at the defendant's roller-skating rink was sufficient to establish a prima facie case that defendant invaded the plaintiffs' right to privacy without having presented proof that defendant actually viewed the plaintiffs inside the restroom stalls); R*oach v. Harper*, 105 S.E.2d 564 (W.V. Ct. App. 1958) (court held that plaintiff had a right to privacy in her apartment after defendant/owner placed a listening device to

overhear her private and confidential conversations). Defendant intruded upon Plaintiffs' right to privacy by surveilling Plaintiffs in their home and entering Plaintiffs' home.[10]

Plaintiffs had no expectation that their employer would surveil and enter their home or go through their trash. Nothing in the job order or the H-2A contract indicated that Defendant would enter Plaintiffs' home, search their trash, or place them under recorded video and audio surveillance while they were on or off duty. Ex. A.[11] Per the H-2A regulations, 20 C.F.R. §653.501(c)(3)(viii), the H-2A contract must include all material terms and conditions of employment. PageID.3, 4, 6 ¶¶13, 17, 22. Defendant surveilled Plaintiffs at their home. PageID.13 ¶ 64. Defendant assigned Plaintiffs to the housing unit for their personal use as their temporary home. PageID.7, 13 ¶31, 63. Defendant placed a camera facing into, and recording video and audio of, the backside living area and balcony of their home without their consent. PageID.13 ¶¶63, 64. The area on the backside of the home was not visible from the public roadway or public view.[12]

---

[10] The 4th Amendment to the Constitution of the United States provides people with the right to be secure in their persons and houses. U.S. Const. amend. IV. While the Fourth Amendment applies to government search and seizures, the Fourth Amendment caselaw addresses whether a person has a reasonable expectation of privacy. In those cases, the courts' have held that a person's home is a private place and entitled to additional protections. *See Payton v. New York*, 445 U.S. 573 (1980) (finding that entering of private residences to perform warrantless searches was in violation of the 4th amendment); *Boyd v. United States*, 116 U.S. 616, 630 (1886) (stating that invasion by the government or its employees into the "sanctity of a man's home and the privacies of life" is in violation of the 4th amendment); *Griswold v. Connecticut*, 381 U.S. 479, 495 (1965) (holding that there exists a right to privacy within one's home).

[11] The H-2A contract available at Exhibit A is incorporated into the pleadings. *Supra*, n.2. If the Court deems it necessary, and given the opportunity to amend, Plaintiffs would allege that: Plaintiffs had no expectation that they would be placed under surveillance at any time prior to Defendant's entering of their home and conducting a search within their home, searching their trash, and setting up the cameras pointed at their housing unit.

[12] Plaintiffs did not specifically plead this fact, but it is a reasonable inference from the facts in their Complaint at PageID.13 ¶¶64, 66, which should be construed in Plaintiffs' favor. If the Court deems it necessary, and given the opportunity to amend, Plaintiffs would allege that the backside of their unit and the balcony, where they convened, was not visible from the public roadway or view.

Defendant was able to view and listen to Plaintiffs private conversations, and recorded video and audio of Plaintiffs, while they were at or within their home. PageID.13 ¶¶68-69. Due to Defendant's actions, Plaintiffs felt restrained in their own private actions, which caused them anxiety. PageID.13 ¶67. Defendant intruded upon Plaintiffs' privacy by also physically entering their home without their consent while they were working and rummaging through their trash outside their home without their consent. PageID.13-14 ¶¶70-72. Therefore, Defendant intruded into Plaintiffs' private lives inside their home by not only using recording devices, but by physically entering and searching the premises as well as going through their trash.

Defendant cites to *Saldana v. Kelsey-Hayes Co.* and *York v. Gen. Elec. Co.*, 759 N.E.2d 865 (Ohio Ct. App. 2001) to argue that it had a legitimate business interest in surveilling Plaintiffs outside their home. Def.'s Memo, PageID.40.[13] The Court's holding in *Saldana* case, however, turned on the fact that the employee was suspected of workplace disability fraud and the surveillance was targeting the fraud. *Saldana*, 443 N.W.2d at 384. In *York*, *759 N.E.2d at* 868 (Ohio Ct. App. 2001), the surveillance was of an employee suspected of fraud in a worker's compensation case who was being recorded while "on his front porch, in his yard, driving on public streets, and walking in public places. All of the scenes on the video were outside and in public view." In both cases, Defendant's surveillance was from public view outside the home and involved suspected fraud.

In this case, Defendant does not argue that Plaintiffs are suspected of fraud, but rather states its "interest in monitoring the movements of quarantining or isolating employees during a

---

[13] Defendant cites to other cases that purport to allow invasion of privacy within the employer-employee relationship. However, each of the cases cited relates to surveillance of work areas and take place at the worksite (not at the employee's home) as indicated in Defendant's parentheticals.

pandemic." Def.'s Memo, PageID.40. The cameras were directed at the living area and areas where Plaintiffs often gathered for meals and to pass the time due to the lack of air conditioning in their house during the summer.  PageID.13 ¶63-65. Further, Defendant recorded the audio, as well as the video, of Plaintiffs. PageID.13 ¶69. Plaintiffs felt as though they could not move around or speak freely. PageID.13 ¶¶67. Defendant's "interest in monitoring" the movement of Plaintiffs would not have required audio recording, going through Plaintiffs' trash, or searching Plaintiffs' housing.

Also, Defendant had been surveilling Plaintiffs long before they contracted COVID-19. PageID.13 ¶70. In fact, there was no part of Plaintiffs' lives, while they were at home or at work, that was sheltered from Defendant's surveillance. Plaintiffs were unable to have private conversations and could not hide details regarding the food they ate, beverages they drank, visitors to their home, or other hobbies or behaviors that would result in trash or items kept in their home. Defendant fails to explain why it dug through Plaintiffs' trash or entered their home while they were at work. PageID.13 ¶¶70-71. Accepting the factual allegations as true, with all reasonable inferences in Plaintiffs' favor, and considering all the intrusive actions of Defendant together, Plaintiffs had a right of privacy upon which Defendant intruded without a legitimate business interest.

### 3. Defendant's Intrusion was by Means or Method Objectionable to a Reasonable Person.

The question of "whether an intrusion is objectionable to a reasonable person is a factual question best determined by a jury." *Saldana*, 443 N.W.2d at 383. To prove a prima facie case for intrusion upon seclusion, a plaintiff must prove sufficient facts to prove the first two elements. *Wiles v. Ascom Transp. Sys.*, 478 Fed. Appx. 283, 294 (6th Cir. 2012) (also stating that whether

the intrusion into Plaintiff's privacy was highly offensive to a reasonable person is a determination that is made by the trier of fact).

Plaintiffs allege that due to the proximity of the cameras in their living space, they felt restrained. PageID.13 ¶67. They felt that they could not speak or move around freely. PageID.13 ¶¶67, 69. Plaintiffs felt uncomfortable. and anxious because they were constantly being watched. PageID.13 ¶67. Additionally, Plaintiffs allege that the installation of the cameras were placed in retaliation for their complaints about the lack of COVID safety procedures in the workplace prior to contracting the virus. PageID.10-12 ¶¶42-46, 55-57. Therefore, Plaintiffs sufficiently plead a right of privacy upon which Defendant intruded, without a legitimate business interest and by means or method that would be found objectionable by a reasonable person.

**D. This Court has Supplemental Jurisdiction over Plaintiffs' Invasion of Privacy Claim.**

District Courts have supplemental jurisdiction over state law claims that are so related to the federal claims for which the court has original jurisdiction that they "form part of the same case or controversy." 28 U.S.C. § 1367. Courts have held that "[c]laims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Baker v. JP Morgan Chase Bank, N.A.*, No. 3:12-cv-1222, 2013 WL 5331136 *2 (M.D. Tenn. Sept. 23, 2013) (citing to *City of Chi. v. Int'l College of Surgeons,* 522 U.S. 156, 164 (1997)).

In this case, Plaintiffs' invasion of privacy "derives from a common nucleus of operative facts," namely their H-2A contract. Both of Plaintiffs' claims turn on the terms and conditions of the Plaintiffs' H-2A employment contract. *See supra*, Subsection C. The surveillance that is at the heart of Plaintiffs' invasion of privacy claim is an additional breach of their contract, because the contract did not include terms involving Defendant surveilling them or specify that surveillance would be done in these four different ways: video recording, audio recording, going through their

trash, and searching their home. PageID.6, 12 ¶22, 61.[14] Defendant assigned Plaintiffs to the housing unit for their personal use as their temporary home, which is where the surveillance took place. PageID.7, 13 ¶31, 63. For the reasons set forth above at Subsection A, this Court has subject matter jurisdiction over Plaintiffs' breach of contract claims. As such, this Court also has supplement jurisdiction over Plaintiffs' invasion of privacy claim.

## V.    IN THE ALTERNATIVE, PLAINTIFFS SEEK LEAVE TO AMEND

Finally, if the Court holds that Plaintiffs do not properly plead sufficient facts to support any claim above, Plaintiffs seek leave to amend to correct any deficiencies perceived by the Court. *See Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (Rule 15 reflects a "liberal amendment policy…"); *see also*, *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1983). Leave to amend at this early stage would not be dilatory or prejudicial. *See Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097 at *1 (W.D. Ky. Oct. 4, 2016) (amendment should be allowed "so long as the opposing party suffers no prejudice or disadvantage…") (Citing *Cooper v. Am. Emp. Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961)).

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny the motion to dismiss.

Respectfully Submitted,                    Dated: February 22, 2021

/s/ M. Olivia Villegas
M. Olivia Villegas (P83628)
ovillegas@farmworkerlaw.org

Kara Moberg (P73820)

---

[14] By reference, Plaintiffs have alleged that Defendant breached the employment contract in several ways because the terms and conditions of employment were materially different than those in the employment contract. PageID.12 ¶61. If the Court deems it necessary, and given the opportunity to amend, Plaintiffs would specifically allege an additional breach of their contract due to the surveillance.

24

kmoberg@farmworkerlaw.org

J. Elizabeth McClain (P83023)
emcclain@farmworkerlaw.org

Farmworker Legal Services
350 E. Michigan Avenue, Suite 310
Kalamazoo, MI 49007
Telephone: (269) 492-7190
Fascimile: (269) 492-7198

*Attorneys for Plaintiffs*

25